J-S09020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY DAVID BEITLER | : | |
| | : | |
| Appellant | : | No. 1093 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 13, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001284-2020

BEFORE: PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 4, 2025**

Appellant Corey David Beitler appeals from the judgment of sentence imposed following his conviction for possession of a firearm by a prohibited person.[1] Appellant's counsel, Arley L. Kemmerer, Esq., (Counsel) has filed a petition to withdraw, along with an **Anders**/**Santiago** brief.[2] After careful review, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The trial court set forth the following factual history:

On February 14, 2020, the [Pennsylvania State Police] took a report of a stolen firearm from Jamie Ritter. Ms. Ritter learned that her boyfriend, Steffan Rookstool, had stolen her firearm and sold it for drugs. Based upon the information they then received from Mr. Rookstool, an attempt was made to locate [] Appellant,

---

[1] 18 Pa.C.S. § 6105(a)(1).

[2] **Anders v. California**, 386 U.S. 738 (1968); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

but the troopers were unable to do so until the following day. They knocked on the door of what was described intermittently as the "pool house/cabana," and [] Appellant came outside. A conversation ensued, and when the troopers asked to go inside and speak with him, [] Appellant told them they needed "a search warrant to come into [his] house." While standing outside the residence, the troopers asked about the stolen firearm, and [] Appellant initially told them that he knew nothing about it. He then told them "I can get you the gun." He spun a story about being a middleman in the sale of the firearm by Rookstool to a man named "Billy" for drugs. The troopers, as part of their investigation, went to the Speedway gas station where the transaction allegedly occurred, reviewed video footage, and were unable to verify [] Appellant's story. Trooper Hamati-Attieh testified "the story of them going to 309 at the Speedway, there's cameras that were operating and functioning just fine. I checked the cameras. They were never there."

On February 20, 2020, a search warrant was secured for the pool house/cabana located at 2156 North Cedar Crest Boulevard, South Whitehall Township. The tenant of that property, Richard Conrad, who lived in the main house, called the state police about the discovery of a firearm in the speaker. He had sublet the "pool house/cabana" to [] Appellant. Trooper Kyle Berardinucci secured the search warrant, and with Trooper Chad Burry, who was assigned to assist, the search was conducted at approximately 2:30 p.m. A variety of photographs of the "pool house/cabana" were introduced into evidence, including a free-standing speaker. Inside "the hollow portion of the speaker was a firearm." The firearm with its loaded magazine was then removed from the speaker. A plastic bag that contained ammunition was also located behind the firearm.

[] Appellant was arrested on February 15, 2020, and the firearm was discovered inside the speaker on February 20, 2020. Following [] Appellant's arrest, his prison conversations were intercepted, and pertinent conversations were introduced into evidence to demonstrate his awareness of the firearm in the speaker. He initially implores a visitor at the prison (Eugene Souders) to remove the speaker from the residence. The next day, when he learns the firearm has been found, he complains in a phone conversation that he [had] told them to "get the speaker out of there."

[] Appellant presented the testimony of Ann Marie Wieder, a friend of his. She testified that she believed Mr. Conrad sublet the pool house to Kristina Beck, who was in a relationship with [] Appellant. She also believed that [] Appellant stayed at the pool house/cabana. Mr. Conrad, however, testified that he rented the pool house/cabana to [] Appellant for one hundred dollars a week. He confirmed that [] Appellant stayed at the pool house/cabana with his girlfriend, but [] Appellant, who was his friend, was the tenant.

Trial Ct. Op., 7/18/23, at 2-4 (footnotes omitted and formatting altered).

Following a jury trial, Appellant was found guilty of possession of firearms by a prohibited person. On December 13, 2022, the trial court imposed a sentence of five to ten years' incarceration. Appellant timely filed post-sentence motions, which the trial court subsequently denied.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed an opinion addressing Appellant's claims. Appellant's appointed counsel, Kevin S. Santos, Esq., filed with this Court an application to withdraw pursuant to **Anders** and **Santiago** on October 27, 2023. Appellant filed a *pro se* response to Counsel's **Anders** brief on November 21, 2023.

On May 16, 2024, the trial court entered an order withdrawing Attorney Santos' representation and appointing Counsel to represent Appellant. On June 10, 2024, this Court entered an order granting Attorney Santos' application to withdraw and directed newly-appointed Counsel after reviewing the case, to file an advocate's brief or a new application to withdraw with an accompanying **Anders**/**Santiago** brief, while complying with the mandates of **Santiago**, which requires counsel to review the record and determine whether

an appeal would be frivolous. *See Santiago*, 978 A.2d at 361. Counsel filed an application to withdraw with an accompanying *Anders*/*Santiago* brief on July 7, 2024. We denied Counsel's application to withdraw on August 26, 2024, and directed Counsel to attach a copy of a letter sent to Appellant fully advising him of his rights upon the filing of Counsel's application to withdraw. Counsel complied with our directive on September 4, 2024, filing a revised application to withdraw. On October 4, 2024, Appellant filed a *pro se* response to Appellant's *Anders*/*Santiago* brief.[3]

Counsel identified the following issues in her *Anders*/*Santiago* brief, which we have re-ordered as follows:

1. The evidence presented to the jury was insufficient to support the finding of guilt by the jury.

2. Appellant's term of pretrial incarceration was in violation of [Pa.R.Crim.P.] 600.

3. The search warrant for the property where the speakers were located was invalid as was the trial court['s] refusal to allow the jury physical access to the search warrant.

4. Admission of [] Appellant's 2018 possession [of a controlled substance] with intent to deliver guilty plea to the jury was unlawful and prejudicial.

_____

[3] Pursuant to this Court's August 26, 2024 memorandum, the Commonwealth's brief was due within thirty days of Appellant's *pro se* response to Counsel's *Anders*/*Santiago* brief. On November 12, 2024, the Commonwealth filed an application for an extension of time to file its brief and filed its brief on November 19, 2024. The Commonwealth's application for an extension of time to file its brief is GRANTED, and we deem the Commonwealth's brief as filed on November 19, 2024.

5. **Brady**[4] violation: the Commonwealth tampered with/destroyed evidence relating to communications with Mr. Conrad and photographs taken during the execution of the search warrant.

6. The sentence of the trial court was facially invalid and legally insufficient.

**Anders**/**Santiago** Brief at 3 (some formatting altered).

"When faced with a purported **Anders**[/**Santiago**] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant of the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an **Anders**/**Santiago** brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. **Commonwealth v. Millisock**, 873 A.2d 748, 751 (Pa. Super. 2005).

_____

4 **Brady v. Maryland**, 373 U.S. 83 (1963).

Additionally, counsel must file a brief that meets the requirements established in **Santiago**, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Goodwin**, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); **accord Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, Counsel has complied with the procedural requirements for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter explaining his appellate rights, informing Appellant of his right to proceed *pro se* or with private counsel, and supplying Appellant with a copy of the **Anders**/**Santiago** brief. **See Goodwin**, 928 A.2d at 290. Counsel also

provided this Court with a copy of the letter to Appellant informing him of his rights.

Moreover, Counsel's ***Anders***/***Santiago*** brief complies with the requirements of ***Santiago***. Counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Appellant's claims, and sets forth the conclusion that the appeal is frivolous. ***See Santiago***, 978 A.2d at 361. Accordingly, we conclude that Counsel has met the technical requirements of ***Anders*** and ***Santiago***, and we will proceed to address the issues presented in Counsel's ***Anders***/***Santiago*** brief.

### Sufficiency of the Evidence

The first issue identified by Counsel is whether the evidence was sufficient to prove that Appellant possessed a firearm. ***See Anders***/***Santiago*** Brief at 10-12.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Webber***, 306 A.3d 921, 925-26 (Pa. Super. 2023) (citations omitted).

The crime of possession of a firearm by a prohibited person is defined, in relevant part, as follows:

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

* * *

**(a.1) Penalty.—**

* * *

(1.1) The following shall apply:

(i) A person convicted of a felony enumerated under subsection (b) or a felony under The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, who violates subsection (a) commits a felony of the first degree if:

* * *

(B) at the time of the commission of a violation of subsection (a), the person was in physical possession or control of a firearm, whether visible, concealed about the person or within the person's reach.

- 8 -

18 Pa.C.S. § 6105(a)(1), (a.1)(1.1)(i)(B).

The Commonwealth may meet its burden by proving constructive possession of contraband beyond a reasonable doubt and may do so using circumstantial evidence of a defendant's possession of the item at issue. *See* *Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa. Super. 2021) (*en banc*). This Court has defined constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). "The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." *Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019) (citation omitted). "Dominion and control means the defendant had the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession." *Id.* (citations omitted).

Here, the trial court addressed Appellant's constructive possession of the firearm as follows:

> From the commencement of the investigation to the discovery of the firearm, all the evidence pointed to [] Appellant. The stolen

- 9 -

firearm report led to [] Appellant, who, when interviewed outside the pool house/cabana, created a false narrative about the firearm. He told the state police a concocted story of his role as a middleman in the sale of the firearm, when the whole time the firearm was concealed in the speaker. He then, after his arrest, demonstrated his consciousness of guilt in his recorded communications by trying to have the speaker removed from the pool house/cabana, and then expressing his displeasure when learning that the state police had been one step ahead of him.

All the testimony also connected him to the pool house/cabana. It was not only the testimony of the state police who interviewed him outside the residence, but also Mr. Conrad, who sublet the residence to him. Even his own defense witness connected him to the pool house/cabana, although that witness believed Ms. Beck had actually sublet the residence. Even if true, [] Appellant had access to the speaker, and Ms. Beck was not implicated in this offense.

[] Appellant had also displayed the firearm to Mr. Conrad on an earlier occasion. He was told to "get rid of it," but disregarded Mr. Conrad's request. [] Appellant, throughout the trial and in this appeal, has attempted to argue that others possessed the speaker, and thus, the firearm inside the speaker. He points to Mr. Conrad, his friend, [] who sublet the pool house/cabana to him. Mr. Conrad, who alerted the state police to the discovery of the firearm, had no motive to implicate [] Appellant. He also lived in the main house, and [] Appellant [lived] in the pool house/cabana where the firearm was discovered. [] Appellant also suggests that Eugene Souders, another friend, owned the speaker. Mr. Souders was one of the individuals [] Appellant spoke with at the prison about the disposal of the firearm. The suggestion that Mr. Souders owned the firearm is based on a misreading of the search warrant. Following [] Appellant's arrest, Mr. Souders attempted to gain access to the pool house/cabana. Mr. Conrad refused his access to the property. His stated reason for requesting access was to "retrieve personal belongings inside [Appellant's] apartment." Somehow Appellant has contrived the argument that the hearsay statement in the search warrant demonstrates Mr. Souders['] ownership of the speaker. It does not. Additionally, Mr. Souders was not a witness at trial, and the statement in the search warrant is Mr. Conrad's information to the state police about Mr. Souders' attempt to gain access to the property. Mr. Souders['] presence at the property corresponds

- 10 -

with his conversation with [] Appellant at the prison to remove the speaker.

Trial Ct. Op., 7/18/23, at 5-6 (footnotes omitted and formatting altered).

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence establishing that Appellant constructively possessed the firearm. *See Webber*, 306 A.3d at 925-26; *Bowens*, 265 A.3d at 741. As noted above, the determination of whether a witness has testified credibly is a matter reserved solely for the factfinder, and the Commonwealth's evidence "need not preclude every possibility of innocence." *Webber*, 306 A.3d at 925 (citations omitted).

Here, based on the evidence presented at trial, it was reasonable for the jury to conclude that Appellant possessed and controlled the firearm. We note that the jury heard testimony from Richard Conrad, who testified that he did sublet a portion of his property to Appellant. N.T. Trial, 8/16/22, at 130-31. Further, Mr. Conrad testified that Appellant had shown the firearm to him, and that Mr. Conrad directed Appellant to "get rid of that gun." *Id.* at 138. Mr. Conrad subsequently discovered the firearm hidden in a speaker in the portion of his property that he sublet to Appellant, and he called the police upon discovering the firearm. *Id.* at 137-38. After securing a search warrant, the police recovered the firearm. *Id.* at 97-99; *see also* N.T. Trial, 8/17/22, at 74-75. The jury had the opportunity to hear all the evidence presented at trial and was free to weigh the credibility of the witnesses and believe all or

part or none of the testimony. **See Webber**, 306 A.3d at 925-26; **see also** 18 Pa.C.S. § 6105(a)(1), (a.1)(1.1)(i)(B). It is not for this Court to substitute its judgment for the factfinder and re-weigh the evidence. **See id.** Accordingly, Appellant is not entitled to relief on this claim, as such a claim would be frivolous.

### Rule 600

Next, counsel identifies an issue concerning Appellant's speedy trial rights. **Anders**/**Santiago** Brief at 15-16. As noted in the statement of questions presented, Appellant specifically raises an issue with regard to his pre-trial incarceration. **See id.** at 3.

The Pennsylvania Rules of Appellate Procedure permit the immediate review of an order pertaining to bail. **Commonwealth v. Talley**, 236 A.3d 42, 49 n.2 (Pa. Super. 2020) (citing Pa.R.A.P. 1762(b)(2)); **see also** Pa.R.A.P. 1610. Our Supreme Court has recognized that a challenge to a denial of nominal bail pursuant to Pa.R.Crim.P. 600 when a defendant has been convicted and is serving a sentence is "technically moot." **Commonwealth v. Sloan**, 907 A.2d 460, 464-65 (Pa. 2006); **see also Commonwealth v. Samuel**, 102 A.3d 1001, 1006 (Pa. Super. 2014).[5]

---

[5] The **Sloan** Court reached the merits of the nominal bail issue, concluding that an exception to the mootness doctrine existed in that case. **See Sloan**, 907 A.2d at 465 (noting that this Court may decide technically moot issues on the merits where they are of a recurring nature yet capable of repeatedly evading review and involve issues of important public interest). We further note that in **Talley**, this Court recognized that although the Rule 600 nominal
*(Footnote Continued Next Page)*

Here, it is indisputable that Appellant is no longer in pretrial detention, in that he has been tried and convicted, and is now appealing the trial court's judgment of sentence that he is currently serving. We conclude that on this record, Appellant's claim is in fact moot, and not merely technically moot. Unlike **Sloan** and **Talley**, Appellant has failed to raise an issue capable of repetition yet likely to evade review, important to the public interest, or established that he will suffer detriment without this Court's decision. **See Sloan**, 907 A.2d at 464-65; **see also Talley**, 236 A.3d at 49 n.2.; **Samuel**, 102 A.3d at 1006. Therefore, Appellant is not entitled to relief.

## Validity of Search Warrant

The next three issues identified by Counsel concern evidentiary rulings by the trial court.

We review a trial court's evidentiary rulings for an abuse of discretion. **Commonwealth v. Thompson**, 314 A.3d 922, 926 (Pa. Super. 2024). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality,

_____

bail claim before it was "technically moot," it nonetheless reached a merits decision because part of the defendant's claim was derived from the allegation that "the wrongful denial of nominal bail deprived him of a meaningful opportunity to assist in his own defense and, as such, contributed to his conviction." **Talley**, 236 A.3d at 49 n.2. However, in the case *sub judice*, Appellant has not raised an issue that is capable of repetition yet likely to evade review, important to the public interest, or established that he will suffer detriment without this Court's decision. **See In re N.E.M.**, 311 A.3d 1088, 1094 (Pa. 2024) (identifying the exceptions to the mootness doctrine). Accordingly, we discern no exception to the mootness doctrine. **See id.**

- 13 -

as shown by the evidence of record." ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted).

The first evidentiary issue identified by Appellant is whether the search warrant executed by the police to search the speaker was invalid and whether the trial court erred when it did not permit the jury to review the search warrant during deliberations. ***Anders***/***Santiago*** Brief at 13-14.

As noted by Counsel in her ***Anders***/***Santiago*** brief, no challenges to the validity of the search warrant were raised before the trial court in either a pre-trial or post-trial motion. ***See id.*** It is axiomatic that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); ***see also Commonwealth v. Thorne***, 276 A.3d 1192, 1196 (Pa. 2022). A previous panel of this Court has stated:

> Our decisions establish that, "when direct appeal counsel has filed an ***Anders*** brief and [requests] permission to withdraw from representation, this Court may overlook [waiver-causing procedural errors committed by direct appeal/***Anders*** counsel **after** a notice of appeal has been filed] to ensure that ***Anders*** counsel has not overlooked non-frivolous issues." ***Commonwealth v. Cox***, 231 A.3d 1101, 1016 (Pa. Super. 2020) (emphasis added). This Court cannot, however, address issues that were not properly preserved in the trial court. ***Id.*** "[T]he mere filing of an ***Anders*** brief and petition to withdraw will not serve to resuscitate claims that were already waived upon the filing of the notice of appeal." ***Id.***

***Commonwealth v. Steele***, 434 EDA 2022, 435 EDA 2022, 2023 WL 2031021 at *3 (Pa. Super. filed Feb. 16, 2023) (unpublished mem.) (some citations

omitted and some formatting altered).[6]  Accordingly, any challenge to the validity of the search warrant would be frivolous because such a challenge was not properly preserved before the trial court.  **See** Pa.R.A.P. 302(a); **Thorne**, 276 A.3d at 1196.

### Jury Review of the Search Warrant

We now turn to Appellant's claim that the trial court erred when it did not permit the jury to review the search warrant during its deliberations.  The trial court concluded that Appellant waived this issue by failing to adequately identify this issue in his Rule 1925(b) statement.  **See** Trial Ct. Op., 7/18/23, at 19.

It is well settled that a vague Rule 1925(b) statement may result in waiver of issues on appeal.  **See Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa. Super. 2001) (stating that "a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

> When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review.  When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

---

[6] We may cite to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value.  **See** Pa.R.A.P. 126(b).

*Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. 2002) (citations omitted).

In the instant case, Appellant raised the following issue relating to evidentiary issues pertaining to the search warrant: "The [trial court] erred in not permitting the warrant and paper discovery to be entered into evidence for the jury to consider." Appellant's Rule 1925(b) Statement, 5/22/23, at ¶ 5. We agree with the trial court's determination that this allegation of error is overly vague and did not permit the trial court, or by extension, this Court, to conduct meaningful appellate review and we adopt its conclusions concerning this issue. *See Dowling*, 778 A.2d at 686-87; *see also Lemon*, 804 A.2d at 37. Accordingly, this issue is waived, and an appeal would be frivolous.

### Admission of Prior Conviction

Counsel next identifies the issue of whether the trial court erred when it admitted evidence of Appellant's 2018 guilty plea to one count of possession of a controlled substance with intent to deliver.[7] *Anders*/*Santiago* Brief at 14-15.

In a persons not to possess firearms case, a defendant does not "suffer[] unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element["] of the offense.

---

[7] 35 P.S. § 180-113(a)(30).

*Commonwealth v. Jemison*, 98 A.3d 1254, 1262 (Pa. 2014). Importantly, it is the Commonwealth's burden to prove every element of a crime beyond a reasonable doubt, including a prior enumerated conviction in persons not to possess firearms cases. *Commonwealth v. Hewlett*, 189 A.3d 1004, 1009 (Pa. Super. 2018).

> Any possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense only as evidence to establish the prior conviction element of the [persons not to possess] charge, not as evidence of the defendant's bad character or propensity to commit crime.

*Jemison*, 98 A.3d at 1262   Further, "[r]eferences during trial to [a] defendant's unrelated criminal acts may be grounds for a new trial; however, where they are mere passing references and the court issues a cautionary instruction to the jury, a mistrial will not be granted." *Commonwealth v. R. Johnson*, 459 A.2d 5, 10 (Pa. Super. 1983) (citations omitted).

> Here, the trial court reached the following conclusion:

> [] Appellant was convicted of [persons not to possess firearms]. One of the elements of that charge is that [] Appellant was convicted of a disqualifying offense.[8] [] Appellant's conviction in 2018 for possession [of a controlled substance] with intent to deliver . . . , prohibited him from possessing a firearm under Section 6105(c). A certified record of [] Appellant's conviction for that offense was introduced at trial. The certified record did not go out with the jury.

---

8 Section 6105 of the Crimes Code states that an individual convicted of an offense under the Controlled Substance, Drug, Device and Cosmetic Act that may be punishable by more than two years' imprisonment is prohibited from possessing a firearm in this Commonwealth. 18 Pa.C.S. § 6105(a)(1), (c)(2).

Trial Ct. Op., 7/18/23, at 12-13 (footnotes omitted).

Based on our review of the record, we conclude that the trial court did not abuse its discretion when it admitted a certified record of Appellant's previous conviction of possession of a controlled substance with intent to deliver. **See Thompson**, 314 A.3d at 926. As we have discussed, our Supreme Court has held that under these circumstances, the admission of a certified record of a conviction of a disqualifying offense in a persons not to possess firearms case does not prejudice a defendant. **Jemison**, 98 A.3d at 1262. Accordingly, this claim is frivolous.

### **Brady** Violation

Next, counsel posits whether the police committed a **Brady** violation when photographs taken by Trooper Matthew Gehris were lost. **See Anders**/**Santiago** Brief at 15. In his Rule 1925(b) statement, Appellant contends that "the [Commonwealth] tampered [with]/destroyed phone records and recordings of Richard Conrad speaking with the police and destroyed pictures taken by police during the execution of the search warrant." Appellant's Rule 1925(b) Statement, 5/22/23, at ¶ 4.

This Court has explained:

> In **Commonwealth v. Snyder**, 963 A.2d 396 (Pa. 2009), our Supreme Court held that, when the government loses or destroys evidence, the trial court must determine whether the unavailable evidence is "potentially useful" or "materially exculpatory"; if it is only potentially useful, then the defendant must show bad faith by the Commonwealth to have the evidence suppressed. **Id.** at 403-06. Our Supreme Court has further explained:

- 18 -

> [T]he Due Process Clause [] requires defendants be provided access to certain kinds of evidence prior to trial, so they may be afforded a meaningful opportunity to present a complete defense. This guarantee of access to evidence requires the prosecution to turn over, if requested, any evidence which is exculpatory and material to guilt or punishment, *see* [***Brady v. Maryland***, 373 U.S. 83 (1963)], and to turn over exculpatory evidence which might raise a reasonable doubt about a defendant's guilt, even if the defense fails to request it, ***see United States v. Agurs***, 427 U.S. 97 (1976). If a defendant asserts a ***Brady*** or ***Agurs*** violation, he is not required to show bad faith.
>
> There is another category of constitutionally guaranteed access to evidence, which involves evidence that is not materially exculpatory, but is potentially useful, that is destroyed by the state before the defense has an opportunity to examine it. When the state fails to preserve evidence that is "potentially useful," there is no federal due process violation unless a criminal defendant can show bad faith on the part of the police. Potentially useful evidence is that of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. In evaluating a claim that the Commonwealth's failure to preserve evidence violated a criminal defendant's federal due process rights, a court must first determine whether the missing evidence is materially exculpatory or potentially useful.

***Commonwealth v. Chamberlain***, 30 A.3d 381, 402 (Pa. 2011) (some citations and quotation marks omitted).

***Commonwealth v. Kurtz***, 294 A.3d 509, 525 (Pa. Super. 2023), *appeal granted*, 306 A.3d 1287 (Pa. 2023).

Here, the trial court reached the following conclusion:

> Finally, [] Appellant alleges a ***Brady*** violation. [] Appellant makes reference to pictures being "destroyed." The allegation is false. Defense counsel tried to suggest photographs taken by Trooper [] Gehris, who was assigned to the forensic services unit, were destroyed. Trooper Gehris testified that during his testing of items submitted for analysis, he photographed them. For example, the

firearm and ammunition.  He did not maintain those digital images on the camera card, but transferred them without editing to a "non-rewritable DVD/CD."

A **Brady** violation requires three (3) elements to be established. "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecutor has suppressed the evidence, either willfully or inadvertently; and (3) the evidence is material, meaning that prejudice must have ensued." **Commonwealth v. Bagnall**, 235 A.3d 1075, 1084 n.10 (Pa. 2020); **Commonwealth v. Lambert**, 884 A.2d 848, 854 (Pa. 2005).  [] Appellant is unable to establish any of the required elements, and his **Brady** claim is nothing more than a bald allegation.[FN55]

> [FN55] [] Appellant is also unable to identify what "phone records and recordings of Richard Conrad" were either "tampered [with] or destroyed."  Mr. Conrad called the state police regarding the discovery of the firearm.  He testified and was subject to cross-examination.  His phone call to the police, and its preservation, falls far short of the scope of a **Brady** violation.  It is meritless.

Trial Ct. Op., 7/18/23, at 21 (some footnotes omitted).

We first address the phone records and recordings of Mr. Conrad's conversations with the police referenced by Appellant.  As noted by the trial court, it is unclear what phone records and recordings of Mr. Conrad were either "tampered with or destroyed."  **See** Trial Ct. Op., 7/18/23, at 21 n.55.  Based on our review of the record, including Mr. Conrad's testimony at trial, we cannot conclude that Appellant has met any of the three elements of a **Brady** violation, as set forth by **Bagnall**.  **See Bagnall**, 235 A.3d at 1084 n.10.  Accordingly, any such appeal would be frivolous.

With respect to the photographs taken by Trooper Gehris, the record reflects that Trooper Gehris testified that he transferred the unedited digital

photographs he took to a "non-rewritable DVD/CD." N.T. Trial, 8/16/22, at 178. Trooper Gehris further stated that after he transferred the photographs, he determined that they "accurately reflected the items photographed." **Id.** There is no evidence of record that any of the three **Bagnall** factors set forth above are present. Accordingly, any appeal on this basis would be frivolous. **See Bagnall**, 235 A.3d at 1084 n.10.

## Sentencing

Finally, Counsel identifies the propriety of Appellant's sentencing as a potential issue in her **Anders**/**Santiago** brief. Referring to Appellant's Rule 1925(b) statement, Appellant had previously contended that the trial court failed to sufficiently articulate a justification for Appellant's term of incarceration and that the trial court failed to adequately consider Appellant's mitigating circumstances. **See** Appellant's Rule 1925(b) Statement, 5/22/23, at ¶¶ 1-2. In other words, Appellant contests the discretionary aspects of his sentence.

It is well settled:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

***Commonwealth v. Proctor***, 156 A.3d 261, 273 (Pa. Super. 2017) (some citations omitted and formatting altered). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation omitted).

Here, Appellant preserved his sentencing claims in a post-sentence motion and filed a timely appeal. In her ***Anders***/***Santiago*** brief, Counsel includes what is entitled as a Pa.R.A.P. 2119 statement. ***See Anders***/***Santiago*** Brief at 7. In Appellant's Rule 2119 statement, however, Counsel only raises a challenge to the sufficiency of the evidence and fails to address any discretionary aspect of sentencing issue. ***See*** Pa.R.A.P. 2119(f). The Commonwealth did not raise an objection to Counsel's failure to include a proper Rule 2119(f) statement; therefore, our review of the discretionary aspects of sentence is not precluded on this basis. ***Commonwealth v. Laughman***, 314 A.3d 569, 571 (Pa. Super. 2024).

We must now consider whether Appellant has raised a substantial question. As noted above, Appellant has previously contended that the trial court failed to sufficiently articulate a justification for Appellant's term of incarceration or adequately consider Appellant's mitigating circumstances. ***See*** Appellant's Rule 1925(b) Statement, 5/22/23, at ¶¶ 1-2. This Court has long observed that when a sentence is in the standard guideline range, "Pennsylvania law views the sentence as appropriate under the Sentencing

Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted); ***see also Commonwealth v. Berrios***, 297 A.3d 798, 809 (Pa. Super. 2023). Moreover, an allegation that the sentencing court failed to consider a defendant's mitigating factors does not raise a substantial question. ***Commonwealth v. Clary***, 226 A.3d 571, 580 (Pa. Super. 2020); ***see also Commonwealth v. Reid***, 323 A.3d 26, 30 (Pa. Super. 2024) (holding that absent a claim of an excessive sentence, failure to consider a defendant's mitigating factors does not raise a substantial question).

Here, Appellant does not claim that his sentence was excessive. Appellant, therefore, has not raised a substantial question and we agree with Counsel that a discretionary aspect of sentence claim would be frivolous. ***See Clary***, 226 A.3d at 580; ***Moury***, 992 A.2d at 171.

### Appellant's *Pro Se* Response

As stated, Appellant filed a *pro se* response to Counsel's ***Anders***/***Santiago*** brief on October 4, 2024. ***See Goodwin***, 928 A.2d at 290. This Court has set forth the following procedure for when an appellant avails himself of the right to file a *pro se* response to an ***Anders***/***Santiago*** brief:

> By filing a *pro se* response, as in this case, or hiring private counsel, the appellant has essentially filed an advocate's brief. It is well-settled that when an advocate's brief has been filed on behalf of the appellant, our Court is limited to examining only those issues raised and **developed** in the brief. We do not act as, and are forbidden from acting as, appellant's counsel. Accordingly, our independent review is logically limited in the situation presented herein. If we conduct an independent review of the entire record, and conclude that there are no non-frivolous issues to be found anywhere therein, we have rendered the

appellant's right to proceed *pro se* or to hire private counsel, meaningless. There would be no point in allowing a *pro se* or counseled filing if we had already determined any issue raised therein was frivolous.

Therefore, when an appellant, either acting *pro se* or through private counsel, files a response to the **Anders** brief, our independent review is limited to those issues raised in the **Anders** brief. We then review the subsequent *pro se* or counseled filing as we do any advocate's brief.

**Commonwealth v. Bennett**, 124 A.3d 327, 333 (Pa. Super. 2015) (emphasis added).

Because we review a *pro se* response to an **Anders**/**Santiago** brief as we do any advocate's brief,[9] we do so with the following principles in mind: "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review." **Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted); **see also Commonwealth v. Armolt**, 294 A.3d 364, 379 (Pa. 2023) (stating that "mere issue spotting without sufficient analysis or legal support precludes appellate review" (citation omitted)); **Commonwealth v. K. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (holding that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived" (citations omitted)).

In his *pro se* response, Appellant articulates his desire to subpoena documents he has sent to his previous counsel. **See** Appellant's *Pro Se* Response, 10/4/24, at 1-2. Appellant's response raises several issues that we

_____

[9] **See Bennett**, 124 A.3d at 333.

- 24 -

address individually. First, Appellant's response addresses **Brady** violations relating to Mr. Conrad's conversations with police, sufficiency of the evidence claims, and challenges to the search warrant that are addressed in detail above. **See id.** at 2-5.

Appellant also contends that the Commonwealth obtained evidence in violation of the Fourth Amendment's exclusionary rule. **Id.** at 9 (pagination altered). Specifically, Appellant argues that his arrest was illegal because it was based on hearsay evidence. Appellant further argues the evidence used to arrest him was based upon an illegal third-party search and seizure on the part of Mr. Conrad. Next, Appellant alleges that he was deprived of a fair trial because the Commonwealth was "willing to present or fail[ed] to correct lies told by its own witnesses then vouch[ed] for and relie[d] on the witnesses' supposed honesty in its closing." **Id.** at 10 (pagination altered).

In his *pro se* responses to the **Anders**/**Santiago** briefs filed by Attorneys Santos and Kemmerer, Appellant fails to provide any discussion of his claims with citation to relevant authority and failed to develop his issues in any other meaningful fashion capable of review. **See K. Johnson**, 985 A.2d at 924. Accordingly, we are constrained to find these issues waived on appeal. **See id.**

Finally, Appellant appears to raise claims of ineffective assistance of counsel. Appellant's *Pro Se* Response, 10/4/24, at 6-8. Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. **See Commonwealth v. Holmes**, 79 A.3d 562, 577-80 (Pa. 2013).

Instead, such claims are to be deferred to collateral review pursuant to the Post Conviction Relief Act (PCRA).[10] ***Id.*** None of the exceptions that our Supreme Court recognized in ***Holmes*** are applicable here because Appellant did not raise them before the trial court in a post-sentence motion. ***See id.*** at 563-64; ***see also Commonwealth v. Delgros***, 183 A.3d 352, 361 (Pa. 2018) (holding that trial courts can address "claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review[]" and the defendant raised his ineffectiveness claim(s) in a post-sentence motion). Therefore, we conclude that Appellant's ineffectiveness claim cannot be considered on direct appeal, and we dismiss these claims without prejudice to Appellant's right to raise them in a timely filed PCRA petition.

Following our independent review of the issues raised in the ***Anders***/***Santiago*** brief, we agree with Counsel and conclude that this appeal is wholly frivolous. Further, Appellant failed to present any issues of merit in his response to Counsel's ***Anders***/***Santiago*** brief.[11] For these reasons, we

_____

[10] 42 Pa.C.S. §§ 9541-9546.

[11] We reiterate that although this Court would typically conduct an independent review of the record for arguably meritorious issues, ***see Goodwin***, 928 A.2d at 291, because Appellant filed a response to the ***Anders***/***Santiago*** brief, "[this] Court is limited to examining only those issues raised and developed in the [response; w]e do not act as, and are forbidden from acting as, appellant's counsel." ***Bennett***, 124 A.3d at 333.

grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.[12]

Judgment of sentence affirmed. Counsel's petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/4/2025

_____

[12] Appellant filed a *pro se* motion with this Court on November 6, 2024, in which he appeared to request that this Court appoint alternative counsel. On November 8, 2024, and December 5, 2024, Appellant filed with this Court *pro se* motions in which he appeared to seek discovery in the instant appeal. **See** Motion, 11/8/24, 12/5/24. Appellant's *pro se* motions are hereby DENIED.